**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

IFC CREDIT CORPORATION, assignee of
NorVergence, Inc.,

                Plaintiff/Counter-Defendant,

                                CASE NO. 8:05-CV-678-T-17-MAP

     v.

CENTURY REALTY FUNDS, INC.,

                Defendant/Counter-Plaintiff.

_____/

## ORDER

       This cause is before the Court on Plaintiff/Counter-Defendant's Second Motion to Dismiss Defendant/Counter-Plaintiff's Counterclaim and Strike Affirmative Defenses, filed on August 1, 2005 (Docket No. 49), accompanied by a memorandum (Docket No. 50), and Defendant's response thereto, filed on August 10, 2005 (Docket No. 51).

## BACKGROUND

       Plaintiff/Counter-Defendant, IFC Credit Corporation ("IFC"), is an Illinois corporation authorized to conduct business in Illinois, and maintains its principal place of business at 8700 Waukegan Road, Suit 100, in Morton Grove, Illinois.  Defendant/Counter-Plaintiff, Century Realty Funds, Inc. ("Century Realty"), is a Florida corporation with its principal place of business at 500 South Florida Avenue, Suit 700, in Lakeland, Florida.  This case was transferred to this Court from the United States District Court for the Northern District of Illinois, Eastern Division.  This Court takes jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.  Venue is appropriate under 28 U.S.C. § 1391 because Century Realty is subject to personal jurisdiction in the Middle District of Florida, and a substantial portion of the events giving rise to IFC's claim occurred in this district.

1

CASE NO. 8:05-CV-678-T-17-MAP

On January 22, 2004, IFC's assignor, NorVergence, Inc. ("NorVergence") entered into two written Equipment Rental Agreements with Century Realty for the lease of specific telecommunications equipment known as Matrix boxes.  NorVergence rented the box to Century Realty for the purpose of enabling Century Realty to receive a reduced rate on telecommunications services, such as unlimited long distance telephone and high speed internet. Century Realty contends that the boxes were intended to be used in connection with the telecommunications services that NorVergence would provide and that without such services, the purpose of the contract was wholly frustrated.  However, IFC argues that the lease specifically stated that the contract was solely for equipment rental and did not include services or maintenance of the equipment.  Under the contract and a purported unsigned modification made subsequent to the contract, Century Realty agreed to make a monthly payment of $796.84 to NorVergence for a period of sixty months.  On February 24, 2004, Century Realty signed a Delivery and Acceptance Certificate certifying that it had received and accepted the equipment and agreed to all of the terms and conditions of the contract.

NorVergence later assigned the contract rights to IFC and notified Century Realty of the assignment.  The contract specified that NorVergence "could sell, assign or transfer all or any part of the Rental and/or the Equipment without notifying [Century Realty]."  It further stated that the new owner would have the same rights as NorVergence, but not its obligations.  The assignment clause also mandated that Century Realty could not assert any claims against the assignee that it may have against NorVergence.

The contract contained a choice of law provision stating that any claims made against NorVergence must be brought pursuant to the laws of the state where the Rentor's principal office was located.  In this case, NorVergence was principally located in the State of New Jersey. Further, the choice of law provision stated that if the contract was assigned, then any action against an assignee would be brought pursuant to the laws of the state where the assignee's principal office was located.  In this case, IFC is principally located in the State of Illinois.

Century Realty was never provided the telecommunications service that it believed it had contracted to receive.  It claims that the matrix boxes were nothing more than mere routers,

CASE NO. 8:05-CV-678-T-17-MAP

and that they were useless without telecommunications service.  Further, Century Realty claims that NorVergence used unethical and high pressure sales tactics to induce the Century Realty to enter into the contract.  As a result, Century Realty made no payments to IFC.  IFC sued Century Realty demanding payment under the rental agreement.  Century Realty answered the claim denying liability for the payments asserting sixteen affirmative defenses and counterclaimed for rescission of the contract.

IFC moved to dismiss the counterclaim under Fed. R. Civ. P. Rule 12(b)(6) alleging that, as an assignee of the contract and under the terms of the contract, IFC cannot be held responsible for any wrong-doing on the part of its assignor, NorVergence, in the formation or execution of the contract.  Further, it contends that the contract is true and binding as evidenced by the Delivery and Acceptance Certification and that all Affirmative Defenses should be struck.  IFC based its Motion to Dismiss and Motion to Strike on Florida law, despite a provision in the contract designating Illinois law as the parties' choice of law.  IFC filed its motion on June 6, 2005 (Docket No. 36), and Century Realty filed a response on June 16, 2005 (Docket No. 40). Based upon the choice of law provision in the contract, the Court denied without prejudice IFC's Motion in an Order filed on July 22, 2005 (Docket No. 48) and allowed IFC to refile its motion under Illinois substantive law.

IFC's second motion to dismiss Century Realty's counterclaim for failure to state a claim, pursuant to Fed. R. Civ. P. Rule 12(b)(6) and 9(b), and to strike Century Realty's affirmative defenses pursuant to Fed. R. Civ. P. Rules 12(f), is now before this Court for consideration.

<u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint on the basis of a dispositive issue of law.  *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir. 1991).  A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the proponent can prove no set of facts that support a claim upon which relief can be given.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  For the purposes of a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff

3

CASE NO. 8:05-CV-678-T-17-MAP

and accept as true all facts alleged by the plaintiff.  *St. Joseph's Hospital, Inc. v. Hospital Corp. of America*, 795 F.2d 948, 954 (11th Cir. 1986).  The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low.  *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

Federal Rule of Civil Procedure 12(f) allows a court to strike from a pleading "any insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter."  *Harvey v. Home Depot, U.S.A., Inc.*, 2005 WL 1421170 *1 (M.D. Fla. 2005).  "To the extent that a defense puts into issue relevant and substantial legal and factual questions, it is 'sufficient' and may survive a motion to strike, particularly when there is no showing of prejudice to the movant."  *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995) (citing *Augustus v. Board of Public Instruction,* 306 F.2d 862, 868 (5th Cir.1962)).  Moreover, striking a defense is a " 'drastic remedy[,]' which is disfavored by the courts."  *Thompson v. Kindred Nursing Centers East, LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002).  A "court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party."  *Reyher*, 881 F. Supp. at 576.  In evaluating a motion to strike, the Court must treat all well pleaded facts as admitted and cannot consider matters beyond the pleadings.  *Id*.  An affirmative defense will be held insufficient as a matter of law only if it appears that the defendant cannot succeed under any set of facts which it could prove.  *Reyher*, 881 F. Supp. at 576 (citing *Equal Employment Opportunity Comm'n v. First Nat'l Bank,* 614 F.2d 1004, 1008 (5th Cir. 1980)).

DISCUSSION

I.        **Motion to Dismiss the Counterclaim**

IFC challenges Century Realty's counterclaim for pleading sufficiency under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This Rule permits a party to move for dismissal of a pleading on the ground that the pleading fails to set forth a claim for which the law provides a remedy.  Fed. R. Civ. P. 12(b)(6) (West 2005).

Under Illinois law, a party seeking to prevail on a claim for common law fraud must prove as follows: "(1) a false statement of material fact; (2) the party making the statement knew

4

CASE NO. 8:05-CV-678-T-17-MAP

or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury." *Siegel v. Levy Organizational Development Co.*, 607 N.E.2d 194, 198 (Ill. 1992) (citing *Redarowicz v. Ohlendorf*, 441 N.E.2d 324, 331 (Ill. 1982)).

Paragraph 7 of Century Realty's counterclaim makes twelve specific allegations regarding NorVergence's representations during the parties' negotiations. Moreover, the Counterclaim alleges in Paragraph 8 that the assignor of the contract conducted itself in false, misleading, and unfair ways, designed to induce Century Realty into executing the agreements. Paragraphs 9, 10, and 24 of the Counterclaim aver that Century Realty relied to its detriment on the alleged false or fraudulent representations. The Federal Rules of Civil Procedure require that fraud be plead with particularity. Fed. R. Civ. P. 9(b) (West 2005). While it is true that a "plaintiff must plead the 'who, what, when, and where' of an alleged fraud," *Uni Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992), Century Realty clearly does not have all of the facts surrounding NorVergence's business activities and its relationship with IFC. Proper and complete discovery will reveal these facts and allow the parties to better assess their legal positions. Century Realty did not state the exact date and time of NorVergence and IFC's alleged fraud, however it did plead the general time that NorVergence and IFC interacted with them in an alleged fraudulent manner. By pleading as it has, Century Realty has met the minimum threshold under the Federal Rules of Civil Procedure for establishing a claim for common law fraud.

IFC argues on the authority of *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend* that Century Realty has "plead itself out of court" by incorporating by reference the rental agreements and subsequent acceptance certificates. 163 F.3d 449, 455 (7th Cir. 1998). In *City of South Bend*, the court held that "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Id.* at 454. Yet, Century Realty disputes the validity and enforceability of the contract and certificates on the ground that

5

CASE NO. 8:05-CV-678-T-17-MAP

it was fraudulently induced into a contractual relationship with NorVergence, and by assignment, with IFC. Century Realty does make reference to the rental agreements in its Counterclaim, and Century Realty attached the agreements as Exhibit "A" to its Counterclaim. However, this Court cannot overlook the effect of an illegal contract under Illinois law. Illinois law treats illegal contracts as void *ab initio*. *People v. Caban*, 743 N.E.2d 600, 606 (Ill. App. Ct. 1st 2001). Therefore, if Century Realty can demonstrate at trial, through a preponderance of the evidence, that the rental agreements were illegal contracts, then IFC's argument under *City of South Bend* would be moot. In a motion to dismiss, the Court must accept as true all of Century Realty's allegations. Because Century Realty's allegations may demonstrate the illegality of the rental agreements under fraud or other theories, Century Realty must be given an opportunity to advance its Counterclaim.

IFC also challenges Century Realty's Counterclaim as failing to sufficiently connect the role that multiple parties may have played in a fraudulent scheme. IFC directs this Court to *Midwest Grinding Co., Inc. v. Spitz* as authority for finding that Century Realty failed to outline the roles played by NorVergence and IFC in the alleged fraud. 976 F.2d 1016, 1020 (7th Cir. 1992), see also *U.S. ex rel. Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939, 945-946 (N.D. Ill. 2004). The court in *Midwest Grinding* held that "when alleging a fraudulent 'scheme' against more than one defendant, the party who pleads fraud must 'reasonably notify the defendants of their purported role in the scheme'." *Id.* Century Realty has "reasonably [notified] the defendants," *id.*, of their roles in the alleged fraudulent scheme in its Counterclaim. Paragraphs 7, 8, 16, 17, 19, and 20 are averments describing each party's role in the alleged scheme to defraud in a manner which puts IFC sufficiently on notice.

Finally, IFC asserts that it is not liable for fraud or misrepresentation made by NorVergence to Century Realty because "a subsequent assignee simply is not legally responsible for the misrepresentations made by [a dealer] to the consumer. There is no duty of inquiry or investigation placed on an assignee." *Jackson v. South Holland Dodge, Inc.*, 312 Ill. App. 3d 158, 167-168 (Ill. App. Ct. 1st 2000). However, the *Jackson* court also held that "[i]f factual allegations exist from which one could conclude an assignee actively and directly participated in

6

CASE NO. 8:05-CV-678-T-17-MAP

the fraud…such an assignee would be liable for its own pre-assignment fraud." *Jackson*, 312 Ill. App. 3d at 168 (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 497 (1996)). Century Realty has alleged that NorVergence and IFC had a continuing relationship designed to induce companies into leasing Matrix boxes and avoid liability through the assignment clauses in the rental agreements. Century Realty's Counterclaim for fraud or misrepresentation is tested against the Rule 9(b) standard that pleadings alleging fraud have a requisite particularity and specificity. While acknowledging that Century Realty must ultimately carry the burden of proof as to fraud or misrepresentation in its Counterclaim, the Court is satisfied that Century Realty has met the requirement of pleading fraud with particularity and specificity. Therefore, under *Jackson* and *Connick*, because Century Realty may ultimately be able to prove that IFC committed pre-assignment fraud, Century Realty's Counterclaim survives a motion to dismiss.

II.        **Motion to Strike Affirmative Defenses**

IFC challenges Century Realty's affirmative defenses under Rule 12(f) of the Federal Rules of Civil Procedure. In order to prevail on its motion to strike, IFC must demonstrate that "the matter[s] sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher*, 881 F. Supp. at 576. Century Realty's affirmative defenses are directly related to the negotiation, execution, and performance of the rental lease agreements on which IFC relies for a substantial portion of its complaint. Century Realty also raises basic contract principles and defenses in asserting that NorVergence and IFC committed fraud during the negotiation and execution of the rental agreements. These defenses neither confuse the issues nor prejudice either party. Century Realty's defenses raise substantial legal and factual questions that necessitate further inquiry. Therefore, because IFC has failed to demonstrate to this Court that Century Realty's defenses are unconnected to the controversy, confusing, or prejudicial, it has not met its burden in a motion to strike under *Reyher. Id.*

<u>CONCLUSION</u>

The arguments of law and fact relating to the details of the contract between NorVergence and Century Realty, many of which were relied upon by IFC in supporting its motion currently before the Court, would be more appropriately raised in an answer and

7

CASE NO. 8:05-CV-678-T-17-MAP

affirmative defenses to Century Realty's Counterclaim.  In order to meet the standard of review established by the Federal Rules of Civil Procedure and case law, all Century Realty had to do was plead a claim for fraud and/or fraudulent misrepresentation under Illinois law.  This Century Realty has done.

Century Realty's defenses do not rise to the level of insufficiency, redundancy, immateriality, impertinency, or scandalous matter, as required by the Rule, to support IFC's motion to strike.  IFC's arguments are unpersuasive in light of the procedural standards established through case law in this Circuit, illustrated clearly in *Reyher*.  Accordingly, it is

**ORDERED** that the Motion to Dismiss the Counterclaim and Strike Affirmative Defenses (Docket No. 49) be **DENIED** and the Plaintiff/Counter-Defendant shall have ten (10) days from this date to answer the counterclaim.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 21st day of February, 2006.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All Parties and Counsel of Record

8